## In re TECOPA MINING & SMELTING CO.

(District Court, S. D. California, S. D. July 12, 1901.)

BANKRUPTCY—MANUFACTURING CORPORATION—OPERATION OF SMELTER.

A corporation which leases and operates a mine and smelter at a point remote from a railroad, and incidentally conducts a store and boarding house for the accommodation of its employés, and which employs 2 or 3 men in mining, and 12 or 14 in smelting the ore so mined, its chief profit being derived from the operation of the smelter, is "engaged principally in manufacturing," within the meaning of Bankr. Act 1898, § 4b, and may be adjudged an involuntary bankrupt.

In Bankruptcy. On application to set aside adjudication.

The following are the findings and opinion of the referee, William D. Stephens:

### Findings.

(1) That on the 14th day of April, 1900, a creditors' petition was filed herein, praying that said corporation be adjudged bankrupt, and on May 1st thereafter an order was made by said court adjudging said corporation a bankrupt, and referring said cause to me as referee. That on June 16, 1900, the petition of T. A. Brown was filed herein, praying to have the said order of adjudication set aside, and that said petitioner, Brown, was informed of the pendency of the proceedings in bankruptcy herein on May 14, 1900. (2) That more than six months prior to the commencement of proceedings herein the said corporation entered into a contract with the owner of certain mines and a smelter situated in the desert region of Southern California, and one hundred miles from the nearest point on a railroad, whereby said corporation was placed in possession of said mines and smelter, and agreed to mine and smelt the ore of said mines in said smelter, paying the owners 33⅓ per cent. royalty therefor. Said company entered into the performance of said contract, and continued to mine and smelt said ore up to about March 12, 1900. Said mines were about 3½ miles from the smelter, and the ore was hauled to the smelter, and after being smelted the bullion or pig resulting from the smelting, consisting of lead and silver, was hauled to Manvel, on the railroad, and thence transported to Kansas City, Missouri, to a refinery, at a cost of $32 per ton for transporting by wagon and rail. The refiners separated the different constituent metals in the pig or bullion, and paid the shippers the market value thereof, after deducting the charge for refining. There were two or three men employed in mining the ore, which cost seventy-five cents per ton, and there were twelve or fourteen men employed at smelting,—the cost of smelting being $8.94 per ton. The business of mining this ore could not have been successfully carried on without the smelter, neither could the business of smelting have been successfully carried on without ore from the mines. The company, in order to supply the workmen with food, kept a boarding house at the smelter, at which the employés were boarded at a charge of $1.00 each per day, and also kept and sold merchandise, such as was necessary or usual in such places, for sale to the employés and others who wished to purchase. The keeping of such boarding house and the keeping and selling of such merchandise is usual under the circumstances mentioned, and the mining and smelting could not be well carried on without it. Nor would the boarding house and merchandise have been kept without the mining and smelting business also being done. The amount derived by the company from the boarding house and sale of merchandise was about $600 per month. The ore of the mines was of no value until it was smelted, owing to remoteness from the railroad and from market; and the bullion or pig, while it had a market value there proportionate upon the assay, could not be fully realized upon until refined, which refining could not be done there. The company was not the owner of any mine, and mined only the ore from the mines mentioned, and smelted no other ore than that from those mines. (3) I find the fact to be that the principal business of said corporation was that of smelting, and that the profits arising from its business arose principally from the smelting, and to a less ex-

tent from the keeping of a boarding house and selling of merchandise, and that there was no profit derived from mining alone, but that said mining and the keeping of a boarding house and merchandise, and selling of merchandise, were incidental to and necessary to the carrying on of the smelting business, and that the mining was done in order to smelt, and that the smelting was not done in order to mine. (4) That, as a matter of fact and law, the said corporation was engaged principally in manufacturing, and is subject to the provisions of the bankrupt act. (5) That said petitioner, T. A. Brown, did not exercise due diligence in presenting or filing his petition herein, but was guilty of laches and unreasonable delay in said respect.

### Conclusions of Law.

As conclusions of law from the foregoing, the referee finds that said corporation was engaged principally in manufacturing, and is subject to the provisions of the bankrupt act as such manufacturer, and that the petition of the said T. A. Brown should be dismissed at his cost, and that he is guilty of laches and unreasonable delay in presenting or filing his petition herein, and that judgment be entered in favor of Gregory Perkins, Jr., et al., against the petitioner, T. A. Brown, for costs.

Dated February 7, 1901.

### Opinion.

From the findings herein it appears that the corporation was engaged principally in smelting, and it becomes necessary to determine whether smelting is manufacturing, under the provisions of the bankrupt act. Smelting is a process by which ore is placed in an incombustible receptacle, with alternate layers of ore (sometimes mixed with fluxes) and coke. It is then fired, and the ore, being melted, is run off into a receptacle apart from the slag or dross. The different metals in the ore are not separated from each other in the process, but require refining, which is a process by which they are separated. In mines situated as the one mentioned in the findings, it is not usual to refine the bullion or pig at the smelter, but it is shipped to large refineries remote from the smelter; the refiners paying the market value of the refined metals after deducting charges for refining. The word "manufacture" is a compound word of Latin origin, derived from the words "manu" (ablative), by hand, and "facere," to do, to make, to form; but the meaning is not confined to that which is done by hand alone, but by machinery as well. The definition given by Webster is, to make or fabricate from raw materials by the hand, by art or machinery, and work into form convenient for use. Worcester has, in substance, the same definition. This definition must be taken as the popular and usual meaning of the word. Mr. Brande defines "manufacture" as a term employed to designate the changes or modifications made by art or industry in the form or substance of material articles in the view of rendering them capable of satisfying some want or desire of man; and manufacturing industry to consist in the application of art, science, or labor to bring about certain changes or modifications of already existing materials. He includes under the term "manufacture" all branches of industry, with the exception of fishing, hunting, mining, and such industries as have for their object to obtain possession of material products in the state in which they are fashioned by nature. He says that the term is generally applied to those departments of industry in which the raw material is fashioned into desirable articles by art or labor without the aid of the soil, but that there is no real good reason for such limitation, and that it is obvious from the slightest consideration that agriculture is nothing but a manufacture, for the business of the agriculturist is to so dispose of the soil, seed, manure, or other materials that they may supply him with other and more desirable products. Brande, Enc. tit. "Manufacture"; 14 Am. & Eng. Enc. Law, p. 257. Has the corporation here, by smelting, made or formed anything useful? It has changed the form of the ore, by eliminating useless matter, into that which is useful; and the product has another name, being ore no longer, but "pig" or bullion, and having a market value depending upon its assay. In a strict sense, man can create nothing. He can only alter the form of existing things. The ore, when taken from the mine by the process of mining, is changed neither in form nor in substance, un-

less breaking may be termed a change of form. It is ore still. But when smelted it is ore no longer, in form, and the substance is altered by taking away some of its component parts. There has been alteration, and that by human hands and machinery. To my mind, it comes clearly within the popular definition of "manufacturing."

What light do the decisions of the courts throw on the subject? It has been decided that mining is not manufacturing, and this is obvious. If the corporation had been engaged in mining alone, there could be no doubt but that the corporation was not a manufacturer. One may engage in mining without engaging in smelting, or in smelting without mining. In fact, I think the two things are not generally done by the same persons. The great smelters of the country, such as those at Denver and at San Francisco, and at Swansea, in Wales, if I am correctly informed, do only custom work, and do not mine their own ore. In the case of Rogers v. Danforth, 9 N. J. Eq. 289, the court say: "What is the definition for a forge or furnace for the manufacture of iron? For, if there is a definition comprehended and understood alike by scientific men and by mechanics acquainted with the business referred to, such definition ought to control the court in its construction of this covenant. What is such a forge or furnace? An establishment or mechanical contrivance by which iron is made or manufactured from the ore. From what is iron manufactured? It is manufactured from ore." See, also, the same point, Attorney General v. Lorman, 59 Mich. 157, 26 N. W. 311, 60 Am. Rep. 287, and Lawrence v. Allen, 7 How. 785, 12 L. Ed. 914. I can see no distinction in principle between these cases and the one at bar; the only difference in fact being that one is iron ore, and the other lead and silver. Both are converted by heat into a mass, which is not as yet worked into its final form for use. The following have been held to be manufactures: Animal charcoal, produced by burning bone, and bonedust, produced by pulverizing it. Schriefer v. Wood, 5 Blatchf. 216, Fed. Cas. No. 12,481. Salt, when produced by boiling or evaporation. Id. Producing and supplying illuminating gas. Nassau Gaslight Co. v. City of Brooklyn, 89 N. Y. 409. The tanning of leather. City of New Orleans v. Le Blanc, 34 La. Ann. 597. Ice, when made by artificial means. People v. Ice Co., 99 N. Y. 181, 1 N. E. 669. Timber split into staves, or into long pieces designed for shovel handles. U. S. v. Hathaway, 4 Wall. 404–408, 18 L. Ed. 395. Reeds which have been cut into square form. Foppes v. Magone (C. C.) 40 Fed. 570. The slaughtering of hogs, and converting the flesh into bacon, Engle v. Sohn, 41 Ohio St. 691, 52 Am. Rep. 103. A flour mill furnished with a middlings purifier, bran duster, belting, and other machinery. Carlin v. Assurance Co., 57 Md. 515, 40 Am. Rep. 440. See the definition given by the court in this case. "Under the bankrupt law, one who prepares lumber, the growth of his own land, for market, and sells it, is a manufacturer, within the meaning of the bankrupt act; and the land may almost be said to be incident to the lumber which usually forms its chief value, and the manufacture itself is the main source of profit." In re Chandler, 1 Lowell, 478, Fed. Cas. No. 2,591. The above cases, analogous in principle to the one under consideration, would seem clearly to establish the law to be that smelting, under the circumstances in this case, is manufacturing. But one case was cited by counsel where the contrary was held. In re Rollins Gold & Silver Min. Co. (D. C.) 102 Fed. 983, in which the referee, in an obiter dictum, declares the law to be that smelting is not manufacturing. He gives no reason for such rule, nor do the authorities bear him out. I therefore hold that smelting, under the circumstances in this case, is manufacturing.

The objection by Mr. Dunning, of counsel for respondent, to admission of the judgment roll in the case of T. A. Brown against the Tecopa Mining & Smelting Company, is overruled, and said copy of the judgment roll is admitted in evidence.

Otis & Gregg, for applicant.

E. T. Dunning, for respondents.

WELLBORN, District Judge. I am satisfied, from the evidence, that the said company is a manufacturing corporation, within the

meaning of the bankrupt law. This conclusion renders it unnecessary for me to pass upon the question of laches. The decision of the referee is affirmed.